Argued December 1, modified December 14, 1926, rehearing denied February 1, 1927.

## NELS J. STONE *v*. H. E. LEONARD ET AL.

(251 Pac. 299.)

**Appeal and Error—Supreme Court must Try Issues on Transcript and Accompanying Evidence, Where Both Parties Appeal from Decree and Motion to Dismiss Plaintiff's Appeal has Been Overruled (Or. L., § 556).**

1. Where both parties appeal from decree and defendant's motion to dismiss plaintiff's appeal has been overruled and become law of case, Supreme Court must try issues anew on transcript and accompanying evidence, under Section 556, Or. L.

**Principal and Agent—Agent Dealing With Principal's Property cannot Acquire Secret Profit, but Should Account to Principal for All Received.**

2. Agent dealing with principal's property cannot acquire secret profit for himself as against principal, but should faithfully account to latter for all that he received.

---

2.  See 21 R. C. L. 825.

**Brokers—Vendors, Discovering Broker's and Purported Purchasers' Fraud in Procuring Absolute Conveyance Too Late to Reclaim Property, Held Entitled to Entire Proceeds Without Allowance of Commission.**

3. Vendors, not discovering fraud, by which broker and others procured absolute conveyance of property and got it into control of innocent parties, until too late to reclaim it, *held* entitled to return of entire proceeds in defendants' hands, without reduction for commission or brokerage.

**Brokers—Defendants Merely Denying Allegations of Complaint, in Suit for Accounting of Proceeds of Realty, Held not Entitled to Deduction of Commission or Brokerage.**

4. Defendants merely denying all allegations of complaint, in suit for accounting of proceeds of realty, except that defendants, to whom codefendant broker represented that property was sold, claimed to own realty received in exchange, and that plaintiff formerly owned property sold, *held* not entitled to deduction of commission or brokerage from amount recoverable by plaintiff, there being no issue on such subject.

**Equity—Terms of Final Decree are Controlled by Pleadings.**

5. In equity, as at law, pleadings have controlling effect in molding, terms of final decree.

**Brokers—Broker must Show Production of Buyer, Ready, Able and Willing to Purchase on Terms Prescribed, to Recover Commission.**

6. To recover commission on sale of realty, broker must show his compliance with authority given him by producing buyer ready, able and willing to purchase on terms prescribed.

Agency, 2 **C. J.**, p. 697, n. 53, p. 699, n. 64.
Appeal and Error, 4 **C. J.**, p. 726, n. 17, p. 897, n. 81.
Brokers, 9 **C. J.**, p. 537, n. 36, p. 540, n. 46, p. 587, n. 5, p. 595, n. 29.
Courts, 15 **C. J.**, p. 961, n. 36.
Equity, 21 **C. J.**, p. 671, n. 9.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

MODIFIED.    REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. C. M. Idleman.*

3. See 4 **R. C. L.** 326.
6. See 4 **R. C. L.** 307.

For respondents there was a brief over the names of *Mr. E. E. Heckbert, Mr. Russell E. Sewall* and *Mr. Frank J. Streibig, Jr.,* with an oral argument by *Mr. Guy C. H. Corliss.*

BURNETT, J.—In substance, the complaint avers that on October 22, 1921, and for long prior thereto, the plaintiff was the owner of certain lots in Portland and that the defendant Leonard, about that date, representing himself to be a licensed real estate agent and broker, secured from the plaintiff the following writing:

"October 15, 1921.

"Mr. H. E. Leonard:

"This will authorize you to sell the apartment house now located on Lots 12 and 13, Block 29, Albina, Portland, Oregon, otherwise known as Durfey Apts., 308 Stanton Street, for the sum of $19,000.00.

"Your commission to be 5% of the sale price.

"This option to continue for the space of 30 days from date.

"N. J. STONE."

It is stated that prior to October 22, 1921, defendant sold the plaintiff's realty to Agnes and Rudolph Martin, not parties to this suit, for $27,000, upon which the Martins paid $1,000 in cash and as part of the purchase price delivered to the defendant Leonard two deeds in blank, conveying certain realty owned by them, one tract being situated in Clarke County, Washington, and the remainder in Portland, Oregon. Briefly speaking, the rest of the complaint declares, in substance, that Leonard and the other defendants conspired together to deceive and defraud the plaintiff, concealing from him the actual purchase price received for the property from the Martins, representing that they had sold it to defendant A. B.

Johnson for $19,000, and that, in order to make the defendant Leonard secure in his commission, it would be necessary for the plaintiff to execute and deliver to Leonard a contract to sell to the latter the realty before owned by the former for the price of $19,000, which contract the plaintiff accordingly executed and delivered to Leonard on those representations; that A. B. Johnson took the deed executed in blank by the Martins for the Portland property, had his name inserted therein and claims to own the original Martin property and that Leonard did the like with the Martin deed to the Clarke County property, inserted his own name therein and claims to own the same. In brief, the charge is that, empowered as he was to sell the plaintiff's property for $19,000, the defendant Leonard, calling to his aid the other defendants, deceived the plaintiff, concealed from him the fact that it had been sold for $27,000, intending to reap a profit reflected in the ownership of the former Martin realty, thus making a secret profit to themselves in prejudice of the plaintiff's rights and, after having parted with his property by his deed in blank which ultimately came into the hands of innocent purchasers, the plaintiff now seeks to recover from the defendants the proceeds of the actual transaction by calling upon them for an accounting. The answer admits the former ownership of the plaintiff's realty and denies every other allegation except that A. B. Johnson and his wife claim to own the Portland property. After hearing the testimony, the Circuit Court made the following findings of fact:

"I.  That during all the times hereinafter mentioned the defendants A. B. Johnson and Christine Johnson were and now are husband and wife.

"II.  The plaintiff was on October 22, 1921, and for more than six months prior thereto the owner in

fee simple of Lots Twelve (12) and Thirteen (13) in Block Twenty-nine (29), Albina, within the corporate limits of the City of Portland, Multnomah County, Oregon.

"III.    That on or about the 15th day of October, 1921, the defendant H. E. Leonard represented to the plaintiff that he was a duly and regularly licensed real estate broker and upon these representations received from the plaintiff written authority to act as the agent for the plaintiff in selling lots 12 and 13, block 29, Albina, within the corporate limits of the City of Portland, Multnomah County, Oregon, at a selling price of $19,000.00 upon the consummation of which sale the said H. E. Leonard was to receive 5% of the selling price.

"IV.    That afterwards, to-wit: and on the 21st day of October, 1921, the defendants H. E. Leonard and C. O. Johnson sold the said premises to Agnes Martin and Rudolph Martin for the gross sum of $27,000.00 and a contract was executed at that time between H. E. Leonard, acting as the agent of the plaintiff herein, and Agnes Martin and Rudolph Martin, which said contract however bears date of October 24th, 1921, by the terms of which said contract the said Agnes Martin and Rudolph Martin agreed to pay therefore $1,000.00 in cash, $1,000.00 in one year, and $1,000.00 in two years and to pay $6,000.00 in monthly installments of 100.00 each and to assume a mortgage upon the said premises in the sum of $9,000.00 and to convey as a part of the purchase price the following described real property, to-wit: (Describing in detail all the former Martin realty.)

"V.    That afterwards, to-wit, and on the 22nd day of October, 1921, and in the forenoon of the said day, the said Agnes Martin and Rudolph Martin in carrying into effect the said contract and as a part of the consideration for the purchase of the said lots 12 and 13, block 29, Albina, paid to H. E. Leonard and C. O. Johnson $1.000.00 in two checks of $500.00 each which were by the said parties converted into cashier's

checks of the same amount and in the name of C. O.
Johnson and executed deeds with blank grantees for
the above described property, all which was kept
secret from the plaintiff herein.

"VI.   That afterwards, to-wit, and in the evening
of the 22nd day of October, 1921, between the hours
of 7:00 and 9:00 o'clock, the said defendants and each
and all of them falsely and fraudulently represented
to the plaintiff and caused him to believe that the de-
fendant A. B. Johnson was purchasing the said prop-
erty, Lots 12 and 13, Block 29, Albina, and that he
was paying therefor the sum of $19,000.00 and the
plaintiff herein being ignorant of the fact that Agnes
Martin and Rudolph Martin had already purchased the
said property for the consideration of $27,000.00 and
that plaintiff did not know that the said H. E. Leonard
had sold the said property to the said Martins and was
ignorant of the fact that they had already executed
and delivered to the said H. E. Leonard a contract and
also executed deeds for the said real estate hereinabove
described in paragraph IV, and the plaintiff being
thus deceived executed and delivered to the said H. E.
Leonard a writing purporting to be a contract for the
sale of the said Lots 12 and 13, Block 29, Albina,
which was denominated and designated upon the trial
as plaintiff's Exhibit 'E.'

"VII.   That at the time of the execution of the
written instrument purporting to be a contract between
the plaintiff herein and H. E. Leonard for the sale
of Lots 12 and 13, Block 29, Albina, on the evening
of the 22nd day of October, 1921, and at which time it
was represented by the defendants herein that the
said property was being purchased by A. B. Johnson,
it was agreed between the plaintiff and the defendant
H. E. Leonard that his commissions in making the
sale of the said property should be and was specified
at the sum of $900.00.

"VIII.   At the time of the execution of the said
written instrument purporting to be a contract of sale
of the said property from the plaintiff herein to A. B.
Johnson, the defendants herein, H. E. Leonard and

C. O. Johnson represented to the plaintiff that it was necessary that the said contract be executed from the plaintiff directly to the defendant H. E. Leonard instead of being made to A. B. Johnson in order that the said H. E. Leonard might be secured in his commissions granted to him by the plaintiff herein in the written authority of agency on the 15th day of October, 1921; that all the said representations were false and untrue and were made for the purpose of deceiving the plaintiff herein and to procure his signature to the said contract and believing the same to be true he signed the said instrument and that during all of the said transactions, C. O. Johnson was the agent of the defendant A. B. Johnson and acting for him as such, and that all the property in Multnomah County, Oregon, procured from Agnes Martin and Rudolph Martin as a part of the consideration of the purchase price of said Lots 12 and 13, Block 29, Albina, was taken over by the said A. B. Johnson for the purpose of assisting the defendants in carrying out their scheme to cheat and defraud the plaintiff out of the said property and his name inserted in the said deed executed by Agnes Martin and Rudolph Martin with blank grantee and that the deed was afterwards placed of record in the office of the County Clerk, Multnomah County, Oregon, and duly recorded in Book 867 of page 205 of Deeds and that all the said acts in procuring the said contract from the plaintiff herein and in taking over the said property in the name of A. B. Johnson were done and performed for the express purpose of cheating and defrauding the plaintiff herein out of the said property, and that afterwards one of the said deeds executed by the said Agnes Martin and Rudolph Martin with the grantee left blank therein, the name of Emma Stoneberg was inserted in said deed by the defendants herein for the tract of land located in Clarke County, Washington, and set out and described in paragraph IV herein, and that the same was done by the defendants for the purpose of defrauding and cheating the plaintiff herein out of the said property and was without any

consideration and that the said deed has been duly and regularly placed of record in the office of the Auditor of Clarke County, Washington, and recorded in Volume 149 at Page 95 of Deeds.

"IX. That there was transferred to A. B. Johnson by H. E. Leonard $1,000.00 of the indebtedness set out in the contract executed by Agnes Martin and Rudolph Martin in the purchase of the said Lots 12 and 13, Block 29, Albina, and that the same was done with fraudulent intent and for the purpose of cheating and defrauding the plaintiff herein out of the same.

"X. That after the said property had been taken over in the name of A. B. Johnson, he expended thereon the sum of $603.50 in the payment of taxes, repairs and interest in the North half of Lot 2, Block 7, Piedmont, Portland, Multnomah County, Oregon; that the said A. B. Johnson received for rents and the use of the said property the sum of $612.50; that the defendant A. B. Johnson sold and transferred Lot 14, Block 11, Altamead, Portland, Multnomah County, Oregon, and transferred the same to Al Walton and that the purchase price received therefor was $500.00; that afterwards the said Emma Stoneberg sold and transferred the said property located in Clarke County, Washington, to Margaret M. Graham and that the value of the said property during all of the times herein mentioned was, and is, $600.00 and that the same was received by the defendants herein.

"XI. That the plaintiff herein never executed nor signed Defendants' Exhibit 2.

"XII. The plaintiff has no plain, adequate and complete remedy at law."

Based upon these findings of fact, the Circuit Court, on June 26, 1923, made and entered the following decree:

"It is now therefore ORDERED, ADJUDGED and DECREED that the plaintiff have and recover of and from the defendants, H. E. Leonard, C. O. Johnson and

A. B. Johnson, and each of them, for the sum of $1186.84.

"It is ORDERED, ADJUDGED and DECREED that the defendant, A. B. Johnson execute and deliver to the plaintiff herein a transfer of the contract for $1000.00 heretofore transferred to him by H. E. Leonard on or about the —— day of December, 1921, and which was a part of the consideration of the purchase price paid by Agnes Martin and Rudolph Martin for Lots 12 and 13, Block 29, Albina, Portland, Multnomah County, Oregon, and in case of his failure or refusal to do so before the 6th day of July, 1923, that the plaintiff recover from the said defendant the sum of $1115.84 in lieu thereof.

"It is further ORDERED, ADJUDGED and DECREED that the defendants A. B. Johnson and Christine Johnson make, execute and deliver to the plaintiff herein a good and sufficient deed of transfer to the following described property, to-wit:

"All of lot Thirteen (13) in Block numbered Sixtynine (69) Irvington Park in the City of Portland, Multnomah County, Oregon. All of lots 5, 6, 7, 8 and 9 Block numbered 155 University Park in the City of Portland, Multnomah County, State of Oregon. Lot 10 in Block 4, Altamead, Portland, Multnomah County, State of Oregon. All of the North half of lot 2 in block numbered 7 in Piedmont in the City of Portland, Multnomah County, Oregon.

"That the said property be transferred clear and free of all liens, excepting a mortgage for $2000.00 of record in favor of Dr. Ford L. Warren and second mortgage of record in favor of O. K. Edwards for $960.00, payable at $40.00 per month, which were liens upon the North half of lot 2 in block numbered 7 in Piedmont in the City of Portland, Multnomah County, Oregon, at the time the same was taken in the name of A. B. Johnson and in case the said defendants should fail, refuse or neglect to transfer the said property before the 6th day of July, 1923, then, and in that event, the plaintiff herein have a judgment

and decree against the defendants and each of them
in the sum of $2765.00 in lieu thereof.

"It is further ORDERED, ADJUDGED and DECREED that
the plaintiff have judgment against the defendants,
and each of them, for costs and disbursements herein
taxed at the sum of $—— and that execution may
issue out of this court for the purpose of enforcing
the same. All objections filed by defendants to the
Findings, Conclusions and Decree this day signed are
overruled."

Two days thereafter, the defendants A. B. and
Christine Johnson moved to modify the decree in cer-
tain respects and on August 7, 1923, the court modified
it by ordering judgment in favor of the plaintiff and
against the defendants A. B. Johnson, C. O. Johnson
and H. E. Leonard in the sum of $186.84; that A. B.
Johnson retain the contract for $1,000, being the cash
payment to become due from the Martins in October,
1923, requiring A. B. Johnson and Christine Johnson
to convey to the plaintiff all the Portland property
coming from the Martins, free and clear of all liens
except two mortgages, one for $2,000 and the other
for $960, and adjudging that the plaintiff recover
from the defendants the costs and disbursements
taxed at $136.25.

Again, on October 8, 1923, the court further modi-
fied the decree in certain respects, among others to
the effect that the conveyance from the defendants
Johnson to the plaintiff should be for the title in the
condition as it was when received, subject to the taxes
and assessments thereafter levied and assessed against
the same, requiring that decree to be entered as of
date August 7, 1923.

1. Heretofore the defendants moved to dismiss the
plaintiff's appeal but the motion was overruled and
has become the law of the case. Both parties ap-

pealed. Under these conditions we are required by
Section 556, Or. L., to try the issues anew upon the
transcript and the evidence accompanying it. At the
hearing the argument was devoted mainly to the valid-
ity of the decrees of August 7th and October 8, 1923.

2. The true question is, what was the proper decree
to be rendered by the court and, in the state of the
record, having refused to dismiss the appeal, we shall
give little heed to this hurly-burly of decrees and
modifications. Tacitly, both parties admit the cor-
rectness of the findings of fact as above set forth.
We think they are abundantly sustained by the evi-
dence. It is well-nigh axiomatic that an agent in
dealing with the property of his principal cannot ac-
quire for himself a secret profit as against his prin-
cipal; that whatever he receives in the transaction of
his principal's business belongs to that principal and
that he should faithfully account to the latter for all
that the agent has thus received.

3. This is not an action or suit upon the original
authorization of Leonard to sell the property for
$19,000. The only purpose for which that instru-
ment was employed, as disclosed by the testimony,
was to serve as one of the factors in the deceit prac-
ticed upon the plaintiff. In brief, the story of the
transaction as disclosed by the testimony and the
findings of fact is that these parties succeeded in
hoodwinking the plaintiff, procured from him an abso-
lute conveyance of his property and, having gotten it
out of his hands and into the control of innocent
parties, sought to retain for themselves part of the
result of the transaction. When it was too late for
him to reclaim the property he had formerly owned,
the plaintiff discovered the fraud. To use the slang

of the day: "He caught the defendants with the goods upon them," and he demands, as he has a right to do, that they be turned over to him. This he is entitled to without any reduction whatever.

4, 5. There is no commission or brokerage on the sale of real estate involved in this suit. For one reason, there is no issue made upon the subject. As stated above, the defendants, joining in their answer, content themselves with an absolute denial of all the allegations of the complaint except that the Johnsons claimed to own the former Martin realty situated in Portland and that the plaintiff was formerly the owner of the property he sold. In equity, as at law, the pleadings have controlling effect in molding the terms of the final decree.

6. Again, if the defendant Leonard would recover commission on a sale of real estate, he must first show compliance on his part with the authority given him, or, phrasing it in the language of numerous decisions of this court, he must first show that he brought to his principal a buyer ready, able and willing to purchase on the terms prescribed in the agent's authority. No such purchaser was produced and hence, at least in this suit under the state of the pleadings, the question of commission cannot be considered.

The original decree of June 26, 1923, was correct in requiring a complete surrender to the plaintiff of all the proceeds of the transaction. It is, therefore, reiterated as the decree of this court with costs and disbursements in favor of the plaintiff.

MODIFIED. REHEARING DENIED.

McBRIDE, C. J., and RAND and COSHOW, JJ., concur.